UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK I. RICHARDSON,

    Petitioner,

                                            CASE NO. 2:06-CV-10730
v.                                JUDGE PAUL D. BORMAN
                                            MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY WOODS,

    Respondent.[1]
_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*   \*   \*   \*   \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.   *Procedural History*

    1.     Petitioner Mark I. Richardson is a state prisoner, currently confined at the Hiawatha Correctional Facility in Kincheloe, Michigan.

---

[1] By Order entered this date, Jeffrey Woods has been substituted for Doug Vasbinder as the proper respondent in this action.

2. On June 27, 1996, petitioner was convicted of conspiracy to deliver 225-650 grams of cocaine and possession with intent to deliver 225-650 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(ii), pursuant to his guilty plea in the Oakland County Circuit Court. Petitioner's plea was entered pursuant to a sentencing agreement under *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), in which the trial court agreed to sentence petitioner to the statutorily mandated term of 20-30 years' imprisonment on the possession charge, and to sentence petitioner to a departure sentence on the conspiracy conviction. On August 22, 1996, he was sentenced to concurrent terms of 20-30 years' imprisonment on the convictions.

3. The prosecutor filed an appeal in the Michigan Court of Appeals, arguing that the trial court erred in imposing concurrent sentences, and that the sentences instead should have been ordered to run consecutively. Meanwhile, petitioner filed his own delayed application for leave to appeal, claiming that the trial court had erred in failing to find entrapment, and that his sentence was disproportionate. On July 31, 1997, the court of appeals denied petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Richardson*, No. 202254 (Mich. Ct. App. July 31, 1997). On September 23, 1997, the court of appeals issued an opinion agreeing with the prosecutor that state law required the sentences to be served consecutively, and remanded the matter to the trial court. *See People v. Richardson*, No. 199149, 1997 WL 33343871 (Mich. Ct. App. Sept. 23, 1997).

4. Subsequently, petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, as well as a motion to set aside his plea in the trial court. Because petitioner's plea had been entered pursuant to a *Cobbs* agreement which could not be fulfilled as a matter of law, the trial court granted petitioner's motion to set aside his plea. On May 28, 1998, the

Michigan Supreme Court dismissed petitioner's application for leave to appeal in light of the withdrawal of his plea. *See People v. Richardson*, No. 110479 (Mich. May 28, 1998).

5. In May 1998 petitioner was tried before a jury. The jury convicted him of the conspiracy and possession charges involving 225-650 grams of cocaine. In addition, the jury convicted petitioner of possession of an altered driver's license, MICH. COMP. LAWS § 257.324, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. In a separate bench trial, petitioner was convicted of possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f. Petitioner was sentenced to consecutive terms of 20-60 years' imprisonment on each of the drug convictions and two years' imprisonment on the felony-firearm conviction, and to concurrent terms of 90 days' imprisonment on the altered driving license conviction and 3-10 years' imprisonment on the felon-in-possession conviction.

6. Petitioner appealed as of right to the Michigan Court of Appeals, claiming: (1) improper denial of his attorney's motion to withdraw; (2) improper denial of severance; (3) his conspiracy conviction was against the great weight of the evidence; (4) improper admission of drug profile evidence; (5) improper instruction on the intent element required for conspiracy; (6) perjury by law enforcement witnesses; and (7) prosecutorial misconduct. The Michigan Court of Appeals found no merit to petitioner's claims, and affirmed his convictions. *See People v. Richardson*, No. 214180, 2001 WL 755392 (Mich. Ct. App. Feb. 9, 2001).

7. Petitioner sought leave to appeal in the Michigan Supreme Court asserting these claims. On October 30, 2001, the Supreme Court, in lieu of granting leave to appeal, remanded the matter to the court of appeals for reconsideration of the conspiracy conviction in light of *People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001), which had been decided in the interim. *See People*

*v. Richardson*, 465 Mich. 898, 635 N.W.2d 687 (2001).

8. On remand, the court of appeals concluded that, in light of *Mass* and the trial court's instructions to the jury on the conspiracy conviction, petitioner's conspiracy conviction had to be reversed, because the jury was instructed that it need not find that petitioner knew that delivery of 225-650 grams of cocaine was the object of the conspiracy. Accordingly, the court reversed the conspiracy conviction and remanded the matter to the trial court. *See People v. Richardson*, No. 214180, 2001 WL 1654795 (Mich. Ct. App. Dec. 21, 2001).

9. Because the jury instruction error related only to the quantity involved in the conspiracy conviction, the verdict was sufficient to sustain a conviction for conspiracy to possess with intent to deliver less than 50 grams of cocaine, and the trial judge entered an amended judgment of conviction on this charge on March 15, 2002. On April 4, 2002, the trial court sentenced petitioner to a term of 1-40 years' imprisonment on this amended conspiracy charge, and reimposed the original sentences on the remaining convictions.

10. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, primarily asserting that his conviction on the delivery charge must be reduced to a conviction of possessing with intent to deliver less than 50 grams of cocaine consistent with the conspiracy charge. The court of appeals dismissed the appeal for lack of jurisdiction, concluding that the application for leave to appeal was not timely under MICH. CT. R. 7.205(F)(3), and that the amended judgment of sentence only pertains to the conspiracy charge. Thus, the possession with intent to deliver charge was final and could only be attacked through a motion for relief from judgment. *See People v. Richardson*, No. 248984 (Mich. Ct. App. Aug. 20, 2003).

11. Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant

4

to MICH. CT. R. 6.500-.508, arguing that the possession with intent to deliver charge needed to be reduced consistent with the reduction of his conspiracy charge. The trial court denied the motion based on petitioner's failure to establish good cause for failing to raise the claim on direct appeal, as required by MICH. CT. R. 6.508(D)(3). Petitioner thereafter filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the following claims:

> I. THE SENTENCING COURT, AS A MATTER OF LAW, SHOULD HAVE ALSO REDUCED THE ORIGINAL CONVICTION CHARGE OF DELIVERY OF COCAINE BETWEEN 225-649 GRAMS DOWN TO DELIVERY OF 50 GRAMS, WHEN THE MICHIGAN COURT OF APPEALS REVERSED THE ORIGINAL CONSPIRACY TO DELIVER 225-649 GRAMS OF COCAINE CONVICTION VERDICT DURING REMAND FROM THE MICHIGAN SUPREME COURT'S ORDER FOR THE MICHIGAN COURT OF APPEALS TO RECONSIDER THE ORIGINAL CONSPIRACY CONVICTION.
>
> II. THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT RICHARDSON'S CONSTITUTIONAL RIGHTS UNDER THE SIX AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY FAILING TO REDUCE THE JURY'S VERDICT DOWN TO POSSESSION WITH INTENT TO DELIVER 50 GRAMS OF COCAINE, AND, VIOLATED THE PRINCIPLE AS ESTABLISHED BY THE UNITED STATES SUPREME COURT IN APPRENDI V. NEW JERSEY, 530 U.S. 466 (2000) WHEN THE COURT SENTENCED DEFENDANT-APPELLANT TO A SENTENCE THAT EXCEED THE STATUTORY MAXIMUM BECAUSE IT WAS BASED ON THE WRONG WEIGHT OF COCAINE INVOLVED, REQUIRING, AS A MATTER OF JUSTICE OR FAIRNESS, THE CONVICTION FOR POSSESSION WITH INTENT TO DELIVER COCAINE BETWEEN 225-649 GRAMS BE REDUCED TO POSSESSION AND DELIVERY OF 50 GRAMS OF COCAINE.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Richardson*, 474 Mich. 903, 705 N.W.2d 129 (2005); *People v. Richardson*, No. 258892 (Mich. Ct. App. Apr. 7, 2005).

12. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 17, 2006. As grounds for the writ of habeas corpus, he claims that the possession with intent to deliver conviction must be reduced consistent with his conspiracy conviction.

13. Respondent filed his answer on August 31, 2006. He contends that petitioner's claims are without merit and are barred by petitioner's procedural default in the state courts.

14. Petitioner filed a reply to respondent's answer on October 6, 2006, asserting that the trial court did not timely respond to his request for a copy of the amended judgment of sentence, which precluded him from filing his direct appeal in a timely fashion, and thus that he has cause to excuse his default.

B.   *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a controlled purchase of narcotics by law enforcement officials. The evidence adduced at trial was accurately summarized in petitioner's initial brief in the Michigan Court of Appeals following his jury trial conviction:

> During the trial in this matter, Drug Enforcement Special Agent Michael Brown testified that on September 7, 1994, he and his partner (Steven Mitchell) met with a confidential informant. (Tr II, 95). The confidential informant (later identified as Katrice Garland) told Brown she knew a guy named Mark (later identified as Defendant), that she had brokered drug transactions for on occasion. (Tr II, 95, 196). Garland gave Brown the pager number of the individual she was working with, and the pager number was identified as being registered to Tom Patterson, in Detroit. (Tr II, 96-97). Defendant was using the social security number and address as Tom Patterson. (Tr II, 97). Brown told Garland to contact Defendant and tell him she wanted nine ounces of cocaine. (Tr II, 99). Nine ounces of cocaine was valued at $6,000. (Tr II, 101). On September 9, 1994, Garland paged Defendant, and he returned the page. (Tr II, 103). The tape of the telephone conversation was played for the jury. (Tr II, 106-109). Garland asked for nine ounces of cocaine for $6,000. (Tr II, 107-109). No exchange took place that day. (Tr II, 110).
> On September 12, 1994, Garland had another recorded telephone conversation with Defendant. (Tr II, 110). During that conversation, Defendant and Garland tried to negotiate a meeting place for the transfer of the cocaine. (Tr II, 114-

120). Garland later paged Defendant, and when Defendant called her back, Garland told Defendant her purchaser refused to do the deal in Detroit. (Tr II, 123). Garland told Defendant if the deal did not occur at her house, then the deal would not get done. (Tr II, 123). Defendant agreed and said, "we'll be there." (Tr II, 124). From Defendant's statement, Brown believed at least one other person would be accompanying Defendant. (Tr II, 124). Brown expected two people to deliver the cocaine because of the large investment, and because one individual would be necessary to protect or assist the other. (Tr II, 125).

Based on the information provided by Garland, Brown believed Defendant would be coming from Detroit. (Tr II, 126). Garland told Brown Defendant was five foot six inches to five foot seven inches tall, and weighed between 160-175 pounds. Defendant had a dark complexion with a low cut hairstyle and was driving a 1994 wintergreen Ford Thunderbird. (Tr II, 126). Brown conducted surveillance in the area where Defendant would be traveling to deliver the drugs, and he observed a 1994 wintergreen Ford Thunderbird. (Tr II, 128). Special Agents Mark Thomas and Robert Bagg pulled in behind the Thunderbird with the siren and lights activated, but the driver failed to stop the vehicle. (Tr II, 129). The vehicle was eventually stopped after it was boxed in by two police vehicles. (Tr II, 129). Defendant was driving the Thunderbird and co-defendant [Granville] Massey was the passenger. (Tr II, 128).

Inside the glove box of the Thunderbird, Brown discovered eight ounces of crack cocaine in a brown paper bag. (Tr II, 131). The cocaine was situated next to a Ruger, a .45 caliber automatic handgun. (Tr II, 131). The cocaine was resting on top of a loaded gun. (Tr II, 168). The bullets inside the gun were .45 caliber, each with a silver tip and a hollow point. (Tr II, 171). Hollow point bullets cause traumatic damage. (Tr II, 171). The serial number on the gun had been drilled out. (Tr II, 134-135).

The cocaine found in the glove box was warm, as though it had been recently manufactured and cooled. (Tr II, 133-134). The cocaine was in two baggies, inside a brown bag. (Tr II, 168). In co-defendant's upper breast pocket shirt, approximately one ounce (19 ½ grams) of cocaine was discovered. (Tr II, 138, 173). A total of nine ounces of cocaine was found in the car and on co-defendant's person. (Tr II, 139). The ounce of cocaine found in Massey's shirt was similar in warmth as the eight ounces of cocaine found in the glove box. (Tr II, 139). Brown had a strong suspicion that the cocaine found in the glove box and in Massey's shirt was part of the same package. (Tr II, 139).

The police discovered two pagers, a small scale and approximately $1800 on co-defendant Massey. (Tr II, 177). Defendant's pager number was inside Massey's pager, indicating that sometime that day, the two men had contacted each other. (Tr II, 182). Defendant had $75 on his person and a pager. The car Defendant was driving was registered to Robert Coleman. (Tr II, 180). When Defendant was arrested, he said he was Robert Coleman. (Tr II, 180). Brown found out through the fingerprint analysis that Defendant was not Robert Coleman. (Tr II, 180). When Defendant was arrested, he said he was going to his girlfriend "Pinky's" house. (Tr

II, 183). Defendant told the police he had no knowledge of the contraband found in his vehicle. (Tr II, 183).

Brown was qualified as an expert in the area of drug trafficking. (Tr II, 186). Brown opined that in large drug transactions (i.e. over 1/4 kilogram of cocaine), the deals will typically occur with two person present (2 persons representing either the buyer or the seller). (Tr II, 188-189). A scale is often brought to the scene of the drug exchange to prevent shortages of the cocaine. (Tr II, 190). Due to the large amount of cocaine found in Defendant's car, Brown opined that the cocaine was for distribution, not personal use. (Tr. II, 192). Most of the drug traffickers Brown dealt with had a large stash of money along with pagers, cell phones and scales. (Tr II, 193).

Roger Fuelster was qualified as an expert in the area of forensic chemistry. (Tr II, 142). He indicated nine ounces of cocaine weighed 255 grams and is approximately a quarter kilogram. (Tr II, 148). The cocaine discovered in the glove box weighed 227.5 grams and was 67% pure. (Tr II, 150). The cocaine found on Massey weighed 19 ½ grams and was 68% pure. (Tr. II, 155-156). The purity of the cocaine found in the glove box and in Massey's shirt pocket was similar. (Tr II, 156). The combined weight of the cocaine was 247 grams, or 8.7 oz. (Tr II, 157).

The testimony of Special Agents Steven Mitchell and Michael Nussbaum was consistent with the testimony of Brown. (Tr II, 262-305).

Co-defendant Massey testified he met Defendant at his house to purchase an ounce of cocaine from him. (Tr III, 13). Massey purchased that ounce for $700. (Tr III, 13). [A]n ounce of cocaine weighs 28 grams, but Massey accepted 19 grams from Defendant. (Tr III, 13). Defendant asked Massey to ride with him to his girlfriend's house. (Tr III, 15). Massey thought Defendant was going to deliver drugs to his girlfriend's house. (Tr III, 16). Massey did not know the drugs were in the glove box. (Tr III, 17). Massey admitted he was collecting Medicaid and food stamps and was known by ten different names. (Tr III, 30-32). Massey also admitted that prior to his arrest, he was sitting next to Defendant in the car when Defendant was on his cell-phone. (Tr III, 40).

Def.-Appellant's Br. on Appeal, in *People v. Richardson*, No. 214180, at 2-6 (Mich. Ct. App.).

C.  *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner's appeal after the resentencing was not timely filed, and was dismissed by the Michigan Court of Appeals on this basis. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision

8

rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Notwithstanding a procedural default, a habeas petitioner may have his claims reviewed on the merits if he shows cause for, and prejudice attributable to, the default. *See id*. at 749. As cause for the default, petitioner contends that he did not receive the amended judgment of sentence which gave him notice that he was still being held accountable for 225-650 grams of cocaine on the possession conviction until February 24, 2003, leaving him only 39 days in which to file his delayed application for leave to appeal.

The Court need not decide whether petitioner's allegation concerning the timeliness of the trial court's provision of the amended judgment to him is sufficient to constitute cause. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the factual uncertainties regarding this procedural default issue, and in light of the fact that petitioner's claim is meritless in any event, the Court should proceed directly to the merits, without first resolving the procedural default issue.

D.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Analysis*

The precise constitutional basis of petitioner's claim is not clear. He does not cite to any particular constitutional provision or any cases applying particular constitutional provisions. Rather, he claims generally that allowing his conviction for possessing with intent to deliver 225-650 grams of cocaine is fundamentally unfair and generally unconstitutional in light of the reduction of his conspiracy conviction to one involving less than 50 grams of cocaine. The Court need not delve into any constitutional intricacies, however, because petitioner's overarching argument–that there is some inherent inconsistency between the two conviction, is without merit.

Michigan law prohibits possession with intent to deliver cocaine, with the crimes and associated penalties categorized by weight involved. As it existed at the time of petitioner's conduct, the Michigan statute provided: "Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form." MICH. COMP. LAWS § 333.7401(1).[2] The statute further provided for penalties based on the amount of drugs involved: for 650 grams or more, 20 years' to life imprisonment; for 225 to not more than 650 grams, 20-30 years' imprisonment; for 50 grams to not more than 225 grams, 10-20 years' imprisonment; and for less than 50 grams, 1-20 years' imprisonment. *See id*. § 333.7401(2). Michigan law further provides

---

[2]All citations to § 333.7401 are to the statute as it existed prior to its amendment by 2002 Mich. Pub. Acts 665 (Mar. 1, 2003), as set forth in the historical notes to the current statutory provision. The 2003 amendment changes the amounts triggering the various statutory penalties, as well as the penalties themselves.

12

that any person who conspires with another to commit an act in violation of the law is guilty of conspiracy and, generally, is subject to the same penalty as is available for commission of the underlying offense. *See* MICH. COMP. LAWS § 750.157a(a). As the Michigan Supreme Court has explained, "[a] plain reading of M.C.L. § 333.7401 makes the amount of a controlled substance an element of a delivery offense." *People v. Mass*, 464 Mich. 615, 625, 628 N.W.2d 540, 547 (2001).

In *Mass*, the court went on to determine whether quantity is likewise an element of conspiracy to violate § 333.7401. The court explained that "[c]onspiracy is a specific intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *Mass*, 464 Mich. at 629, 628 N.W.2d at 549. In light of this understanding of conspiracy and the elements of a delivery offense under § 333.7401, and relying on its prior decision in *People v. Justice*, 454 Mich. 334, 562 N.W.2d 652 (1997), the *Mass* court concluded that to prove a conspiracy to violate the various provisions of § 333.7401, the prosecution must prove beyond a reasonable doubt not only that the defendant conspired to deliver some amount of a drug, but specifically conspired to deliver at least the statutory minimum charged by the prosecution. *See Mass*, 464 Mich. at 629-31, 628 N.W.2d at 549-50. Thus, for example, to show that a defendant conspired to possess with intent to deliver 225-650 grams of cocaine, the prosecution is required to show that the conspirators actually agreed to possess at least 225 grams of cocaine. Importantly, the court recognized that "the prosecution is not required to show the defendant knew the precise or specific amount," *id*. at 632 n.20, 628 N.W.2d at 550 n.20, only that the amount was over the statutory minimum involved in the case. Thus, as the court explained, "the prosecution will always be able to argue for a conspiracy to deliver less than 50 grams of cocaine charge if there is no evidence regarding the amount of cocaine the conspirators agreed to deliver." *Id*. at 633 n.33, 628

N.W.2d at 551 n.23.

In light of the court's decision in *Mass*, the Michigan Court of Appeals in petitioner's case reversed only his conspiracy conviction based on a fault jury instruction regarding the quantity issue. At trial, the trial court had correctly instructed the jury that, to find petitioner and his co-defendant guilty on the conspiracy charge, it had to conclude beyond a reasonable doubt that there was an agreement to deliver 225-650 grams of cocaine. After deliberating some, the jury sent a note to the court asking: "In order to be found guilty of conspiracy to deliver between 225 and 650 grams of cocaine, does each Defendant need to know the exact amount to be delivered or that the amount is in that range?" The trial court responded: "The amount need not be known to the Defendants. Only that there is a conspiracy to deliver and that the substance is cocaine. The subsequent determination of the amount determines the actual charge." *Richardson*, 2001 WL 1654795, at *1. The court of appeals viewed this later instruction as telling the jury that no amount need be shown to have been agreed to by the defendants, and thus improper under *Mass*. *See id*. The court of appeals therefore reversed the conviction. The trial court, viewing the reversal as limited to the quantity element of the conspiracy charge, entered a judgment of conviction on conspiracy to possess with intent to distribute less than 50 grams, consistent with *Mass*. *See Mass*, 464 Mich. at 633 n.33, 628 N.W.2d at 551 n.23 ("the prosecution will always be able to argue for a conspiracy to deliver less than 50 grams of cocaine charge if there is no evidence regarding the amount of cocaine the conspirators agreed to deliver.").[3]

---

[3]Although the court of appeals simply remanded the matter to the trial court in petitioner's case without specific instructions, in the case involving petitioner's co-defendant the court of appeals explicitly remanded "for either entry of a conviction consistent with the jury verdict, i.e., conspiracy to deliver less than 50 grams of cocaine and for sentencing on that offense, or alternatively a new trial on the original charge, at the prosecutor's discretion." *People v. Massey*,

14

Petitioner argues that there can be only one amount involved here, and the amount must be the same between the possession with intent to deliver and conspiracy charges. As the above discussion of *Mass* shows, however, this is not so. "A conspiracy to commit a crime is a separate and distinct offense from the crime which it is the object of the conspiracy to commit." *People v. Ormsby*, 310 Mich. 291, 297, 17 N.W.2d 187, 190 (1945) (internal quotation omitted); *accord Mass*, 464 Mich. at 632, 628 N.W.2d at 550. "The gist of the offense lies in the unlawful agreement between two or more persons to do the unlawful act." *People v. Hamp*, 110 Mich. App. 92, 102, 312 N.W.2d 175, 180 (1981); *see also*, *Pinkerton v. United States*, 328 U.S. 640, 649 (1946); *Mass*, 464 Mich. at 632, 628 N.W.2d at 550. Because the actual agreement is the gravamen of the conspiracy offense, there is no inconsistency in finding that petitioner possessed with intent to deliver all of the cocaine found in his car–which was over 225 grams–but that he and Massey had agreed only to deliver the 19 grams which were found on Massey's person. *Cf. United States v. Mojica*, 185 F.3d 780, 789-90 (7th Cir. 1999); *People v. Saldana*, 899 P.2d 208, 212 (Colo. 1995). As the court noted in *Mass*, because conspiracy is a separate offense which focuses on the agreement, it is not the case "that a conspiracy conviction must be tied to the amount of cocaine that was eventually delivered." *Mass*, 464 Mich. at 632, 628 N.W.2d at 550. Thus, in *Mass* the court reversed the defendant's conviction on a conspiracy charge involving 225-650 grams of cocaine where the quantity element was not submitted to the jury–with directions to enter a verdict on conspiracy to deliver less than 50 grams, which was supported by the jury's verdict notwithstanding the instructional error–while upholding the defendant's conviction for delivering 225-650 grams of cocaine.

Thus, in light of the elements of the two offenses, there is no inconsistency between

---

No. 214420, 2002 WL 44407, at *2 (Mich. Ct. App. Jan. 11, 2002).

petitioner's conviction for possessing with intent to deliver 225-650 grams of cocaine and his conviction for conspiring to deliver only less than 50 grams. And, in the absence of any inconsistency, petitioner does not offer any argument that his conviction for possessing with intent to deliver 225-650 grams is unconstitutional. He does not argue that the evidence was insufficient to support that conviction, nor could he successfully do so in light of the testimony that over 225 grams of cocaine was discovered in the glove box of his car. Nor can he argue that his conviction violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (requiring any factor which increases punishment beyond that otherwise authorized by the jury's verdict be found by the jury beyond a reasonable doubt), because the jury was instructed that, to find petitioner guilty of possessing with intent to deliver 225-650 grams, it had to conclude beyond a reasonable doubt that the cocaine was possessed in that amount. *See* Trial Tr. Vol. III, at 116.

In short, petitioner's conspiracy conviction was reversed on a basis relevant solely to that charge, *i.e.*, the failure to instruct on the quantity element with respect to that charge, and given the distinct nature of the crime of conspiracy there is nothing inconsistent between petitioner's conviction for possessing more than 225 grams of cocaine but only conspiring with Massey to deliver the lesser amount found on Massey's person and which was the object of the controlled buy. Petitioner's jury was properly instructed regarding the quantity element of the possession charge and sufficient evidence was presented to prove that charge beyond a reasonable doubt, and petitioner has offered no other argument that his possession conviction is constitutionally invalid. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief.

F. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 3/24/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 24, 2008.
>
>                                            <u>s/Eddrey Butts</u>
>                                            Case Manager